UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY LEE HOUSTON, | Case No.  22-cv-02475-JSW |
| Plaintiff, | |
| | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT; ON PENDING MOTIONS; REFERRING CASE TO MEDIATION** |
| v. | |
| S. GUTIERREZ, et al., | |
| Defendants. | Re: Dkt. Nos. 26-29 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against three officers at Salinas Valley State Prison ("SVSP"): S. Gutierrez, M. Rangel, and L. Maciel for using excessive force against him.  The Court found Plaintiff's allegations, when liberally construed, stated cognizable claims against Defendants for violating his Eighth Amendment rights.  Defendants' motion for judgment on the pleadings was granted to the extent Plaintiff sued Defendants in their official capacities; the motion was otherwise denied. Defendants filed a motion for summary judgment.  Plaintiff opposed the motion,[1] and Defendants replied.  For the reasons discussed below, the motion for summary judgment is GRANTED, and this case is REFERRED to Magistrate Judge Illman to mediation proceedings.  The other pending motions are addressed below.

## BACKGROUND

Except where noted, the following facts are not in dispute.

On November 11, 2018, SVSP officials conducted prison-wide searches of inmates and their cells.  Plaintiff refused to leave his cell for a search despite orders to do so.  Defendants

---

[1]Two identical copies of the opposition were filed.  (ECF Nos. 30, 32.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Rangel, Gutierrez, and Maciel arrived at Plaintiff's cell and spoke with Plaintiff.  Plaintiff alleges

2  he demanded to see the "Watch Commander," Lieutenant Thomas (who is not a defendant);

3  Defendants deny this.  Plaintiff refused to come out or present his hands for handcuffing, and he

4  jammed the door with a bedsheet so it would not open automatically.  Defendant Gutierrez forced

5  open the door manually.  Plaintiff complied with the order to go to the back of the cell.  An

6  altercation between Plaintiff and Defendants ensued.  The parties present different accounts of the

7  altercation.

8      According to Plaintiff, once he complied with order to go to back of cell, Defendants

9  Maciel and Gutierrez emptied two cannisters of pepper-spray at him.  Then, he complied with

10  orders to walk backwards to the door of the cell where he was hit in the back of the head with a

11  baton.  This made him fall to the knees.  Gutierrez then dragged him using a choke hold, sat on his

12  back, and punched him in the back of his head.  While he was on the ground and handcuffed,

13  Maciel kicked and kneed him in the right abdomen.  Defendant Rangel held his legs while the

14  other Defendants and other officers struck him.  At some point, Plaintiff lost consciousness, but

15  was revived when an unnamed officer kicked him so hard that he came to, urinated blood, and

16  defecated.

17      Defendants present a materially different account of their altercation once Plaintiff went to

18  the back of his cell.  According to Defendants, before being pepper-sprayed, Plaintiff put his hands

19  behind his back and refused to show both of them when ordered to do so.  Plaintiff also refused

20  orders to get on the ground.  Plaintiff threw an unknown liquid in the face of Gutierrez and

21  Rangel.  Gutierrez and Rangel pepper-sprayed Plaintiff, but Plaintiff threw a shampoo bottle at

22  Defendants that was filled with liquid and material he scooped out of the toilet.  Plaintiff refused

23  orders to go to the ground and rushed towards the cell door, where he threw punches at Maciel.

24  Defendants tried to subdue Plaintiff by wrapping their arms around him, but Plaintiff continued to

25  twist his torso and threw his elbows backward to try to hit Gutierrez.  Maciel, Gutierrez, and

26  Plaintiff went to the ground, where Plaintiff tried to hit Gutierrez with his head.  A non-defendant

27  officer put his hands on the back of Plaintiff's head to stop him, and Plaintiff tried spit on him.

28  Plaintiff continued to twist and kick his legs until Defendants were able to put his arms and legs in

2

1    mechanical restraints.

2          The parties agree that after Plaintiff was restrained, he was taken to a hospital where he

3    was examined, including with CT scans and x-rays, and received treatment.  Plaintiff claims he

4    suffered a concussion and a fractured rib, and he continued to urinate blood.  Medical records from

5    the day of the incident show Plaintiff suffered abrasions and swelling in his head, abrasions on his

6    face, elbows, and knees, chemical agent injuries on his face and head, and "acute amnesia;" he

7    was diagnosed with a closed head injury, hematuria (blood in his urine), and a kidney injury that

8    was described variously as a "forniceal rupture," "dilated renal pelvis," "injury to the renal

9    pelvis," and "renal pelvis injury with hematuria;" and x-rays and scans showed an "unremarkable

10   CT brain" and "no evidence of acute injury in the chest or abdomen."  (ECF No. 30-1 at 22-29.)

11   Medical records from November 28 and December 4, 2018, showed a fractured rib on his right

12   side.  Defendants Gutierrez and Rangel were also examined for blood-borne pathogens, and

13   Gutierrez was diagnosed with a broken hand.

                              **DISCUSSION**

15   **I.      Standard of Review**

16          Summary judgment is proper where the pleadings, discovery and affidavits show that there

17   is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

18   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of

19   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

20   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

21   nonmoving party.  *Id.*

22          The moving party for summary judgment bears the initial burden of identifying those

23   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

24   issue of material fact.  *Celotex Corp. v. Cattret*, 477 U.S. 317, 323 (1986).  When the moving

25   party has met this burden of production, the nonmoving party must go beyond the pleadings and,

26   by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for

27   trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material

28   fact, the moving party wins.  *Id.*  "[S]elf-serving affidavits are cognizable to establish a genuine

*United States District Court*
*Northern District of California*

1   issue of material fact so long as they state facts based on personal knowledge and are not too

2   conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

3        At summary judgment, the judge must view the evidence in the light most favorable to the

4   nonmoving party: if evidence produced by the moving party conflicts with evidence produced by

5   the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving

6   party with respect to that fact. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014).   A court may not

7   disregard direct evidence on the ground that no reasonable jury would believe it. *Leslie v. Grupo*

8   *ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (where nonmoving party's direct evidence raises

9   genuine issues of fact but is called into question by other unsworn testimony, district court may

10  not grant summary judgment to moving party on ground that direct evidence is unbelievable).

**II.**   <u>**Analysis**</u>

11

12      1.   <u>Exhaustion</u>

13       Defendants argue Plaintiff did not exhaust his claim that they violated his Eighth

14  Amendment rights by failing to intervene in each other's use of force because the administrative

15  grievance he exhausted did not mention a failure to intervene.

16       The Prison Litigation Reform Act ("PLRA"), provides "[n]o action shall be brought with

17  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

18  confined in any jail, prison, or other correctional facility until such administrative remedies as are

19  available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion means "proper exhaustion, and

20  compliance with prison grievance procedures is all that is required by the PLRA to "properly

21  exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007).  The level of detail necessary in a

22  grievance to comply with the grievance procedures will vary from system to system and claim to

23  claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper

24  exhaustion. *Id.* at 218.  In California, an inmate is required to identify staff members and the staff

25  members' involvement in the case, including names, titles, dates, and any other information that

26  could help ascertain their identities.  Cal. Code Regs. tit. 15 § 3084.2(a), (a)(3).  In general, "a

27  grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."

28  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quotation and citation omitted).  The

United States District Court
Northern District of California

4

1    grievance need not include legal terminology or legal theories unless they are needed to provide

2    notice of the harm being grieved. *Id.* Nor must a grievance include every fact necessary to prove

3    each element of an eventual legal claim. *Id.* The purpose of a grievance is to alert the prison to a

4    problem and facilitate its resolution, not to lay groundwork for litigation. *Id.*

5         To exhaust his Eighth Amendment claim based upon a failure-to-intervene theory, the

6    PLRA did not require Plaintiff to expressly state Defendants failed to intervene in the use of force

7    by each other and other officers. There is no dispute that in his exhausted administrative

8    grievance, Plaintiff stated that all of the Defendants were present when each the force was applied

9    against Plaintiff. The failure to intervene is simply one of the theories upon which Defendants

10   may be held liable under the Eighth Amendment --- the other being their own application of force

11   --- based upon those facts. All that the California regulations require is to identify the Defendants

12   and describe how they were involved, which Plaintiff did. Neither those regulations nor the PLRA

13   required Plaintiff to identify all or any of the theories of liability in the administrative grievance.

14   *See id.* By alleging Defendants were all present when each other used force, and particularly in

15   the absence of any allegation that they tried to stop each other, the grievance sufficiently put

16   Defendant on notice of the problem, i.e. that officers applied excessive force against him and did

17   so in each other's presence without anyone intervening. Accordingly, the Court finds that Plaintiff

18   has sufficiently exhausted his Eighth Amendment claim against Defendants, including to the

19   extent such a claim is based upon a failure-to-intervene theory of liability.

20         2.    Excessive Force Claim

21         Defendants argue Plaintiff has not created a triable issue with respect to his Eighth

22   Amendment claim of excessive force. The treatment a convicted prisoner receives in prison and

23   the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.

24   *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Whenever prison officials stand accused of using

25   excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force

26   was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

27   to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, a

28   court may evaluate the need for application of force, the relationship between that need and the

United States District Court
Northern District of California

5

amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  *Id.* at 7; *see*, *e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013) (reversing district court's grant of defendants' motion for summary judgment because plaintiff's evidence that guards emptied two pepper spray canisters at him when he put his hands on his cell's food port opening raised a disputed issue of material fact regarding whether he posed a threat that justified defendants using pepper spray); *Watts v. McKinney*, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that kicking the genitals of a prisoner who was on the ground and in handcuffs during an interrogation was "near the top of the list" of acts taken with cruel and sadistic purpose to harm another).

Viewing the evidence in a light most favorable to Plaintiff, as the Court must do at this stage of the litigation, there is a triable issue as to whether Defendants' application of force, and/or their failure to intervene in such application of force, was a malicious and sadistic infliction of harm that violated the Eighth Amendment.  According to Plaintiff's sworn account of the facts, which the Court must accept as true and from which the Court must draw all inferences in Plaintiff's favor,  Maciel[2] and Gutierrez pepper-sprayed Plaintiff without provocation and after Plaintiff had complied with orders to retreat to the back of his cell.  Gutierrez then placed Plaintiff in a choke hold until Plaintiff lost consciousness, sat on his back, and punched him in the back of the head multiple times after Plaintiff had been knocked to the ground, was not resisting, and had been complying with Defendants' orders.  Maciel kicked and kneed Plaintiff while he was on the ground, restrained, and not resisting.  Rangel held Plaintiff's legs while Maciel, Gutierrez, and other unnamed officers kicked, kneed, and struck Plaintiff, even though Plaintiff was in handcuffs and not resisting.  The Court may not determine on summary judgment whether this account is credible, as opposed to Defendants' contradictory account.  A rational trier of fact could believe Plaintiff's version of events, and based upon such events, could determine that by applying this amount of force while Plaintiff was compliant and, later, restrained and/or unconscious,

---

[2] The Court recognizes that according to Defendants it was Rangel (not Maciel) who pepper-sprayed Plaintiff with Gutierrez.  The Court must accept Plaintiff's account of this factual dispute as true at this stage.

United States District Court
Northern District of California

1    Defendants sadistically and maliciously applied force to cause harm, not in a good faith attempt to

2    restore order.

3            Defendants argue they are entitled to summary judgment because Plaintiff did not comply

4    with their orders and resisted and assaulted them, and they used substantially less force than

5    Plaintiff describes.  This argument is based upon their version of the events, which contradicts

6    Plaintiff's account on the material issues of the amount of force Defendants applied and the

7    amount of resistance Plaintiff offered.  A rational fact-finder could believe either Plaintiff's or

8    Defendants' version of the facts related to these issues, which means there is triable and material

9    factual dispute precluding the grant of summary judgment on the claim Defendants applied, and/or

10   failed to intervene in the application of, excessive force.

11           Defendants also argue Plaintiff's account cannot be credited because it is contradicted by

12   the medical records of Plaintiff's injuries.  A significant injury is not a threshold requirement for

13   stating an excessive force claim.  *Hudson*, 503 U.S. at 7.  Whether the alleged wrongdoing is

14   objectively harmful enough to establish a constitutional violation is contextual and responsive to

15   contemporary standards of decency.  *Id.* at 8.  Contemporary standards of decency are always

16   violated when prison officials maliciously and sadistically use force to cause harm "whether or not

17   significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical

18   punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of

19   injury."  *Id.* at 9.  It is true, as Defendants argue, the medical records from the day of the incident

20   show Plaintiff did not suffer a concussion or broken rib.  Medical records from 17 and 23 days

21   later show a broken rib, however, which could mean Plaintiff suffered the injury after the

22   altercation with Defendants or the injury was missed when he was initially x-rayed.  Regardless,

23   Defendants could have used excessive force even without concussing Plaintiff or breaking his rib.

24   Under *Hudson*, the issue is how much force Defendants applied, not how seriously they injured

25   Plaintiff.  The injuries are only relevant to the extent they corroborate Plaintiff's account of the

26   force applied, which the medical records from the day of the incident do.  These records show

27   substantial injuries to Plaintiff's kidney, blood in his urine, reports of amnesia, swelling on his

28   head, abrasions on his head, face, and extremities, and exposure to pepper spray.  These injuries

1    are consistent with Plaintiff's account that Defendants pepper-sprayed him, hit him in the head,

2    choked and dragged him, and kicked and kneed him in his torso, and other officers also struck him

3    and kicked him in the groin.  Consequently, the medical records do not preclude, and could even

4    support, a rational finding that Plaintiff's account of the incident is true.

5         For these reasons, there is a triable issue as to whether Defendants applied excessive force

6    in violation of Plaintiff's Eighth Amendment rights.  Defendants' qualified immunity argument

7    fails because no reasonable officer could believe that pepper-spraying, choking, dragging,

8    punching, kicking, and kneeing a prisoner, and restraining such prisoner while this force was

9    applied, where the prisoner was compliant, restrained, not resisting, lying face down, and at some

10   point unconscious, all of which the Court must assume for purposes of this summary judgment

11   motion, was lawful under the Eighth Amendment.  *See Pearson v. Callahan*, 555 U.S. 223, 232

12   (2009).

13                                     **CONCLUSION**

14        Defendants' summary judgment motion is DENIED.  Defendants' motion for a stay of

15   discovery is DENIED as moot.  Plaintiff's motion to compel is DENIED without prejudice to

16   refiling following conclusion of the mediation proceedings ordered below and following

17   Plaintiff's meeting and conferring with defense counsel in accordance with Rule 37(a) of the

18   Federal Rules of Civil Procedure to resolve any outstanding discovery requests.  Plaintiff's request

19   to exceed page limits for his opposition is GRANTED, and his "opposition" to the *Rand* warning

20   is DENIED.

21        This case is REFERRED to Magistrate Judge Illman pursuant to the Pro Se Prisoner

22   Mediation Program.  The mediation proceedings shall take place within 120 days of the date this

23   order is entered.  Magistrate Judge Illman shall coordinate a time and date for a mediation

24   proceeding with all interested parties or their representatives and, within five days after the

25   conclusion of the mediation proceedings, file a report.  All mediation proceedings shall be

26   confidential and no statement made therein will be admissible in any proceedings in the case,

27   unless the parties otherwise agree.  No part of the mediation proceeding shall be reported, or

28   otherwise recorded, without the consent of the parties, except for any memorialization of a

United States District Court
Northern District of California

8

settlement.  All further proceedings in this case except those related to the mediation proceedings, as ordered or permitted by Magistrate Judge Illman, are STAYED pending completion of the mediation proceedings.

The clerk shall send a copy of this order to Magistrate Judge Illman.

This order resolves docket numbers 26-29.

**IT IS SO ORDERED.**

Dated: December 15, 2023

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California